**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| POSTX CORPORATION, | No. C 3:02-cv-04483 SI |
| Plaintiff, | **ORDER RE: DOCUMENTS PRODUCED FOR *IN CAMERA* REVIEW, AND PLAINTIFF'S REQUEST FOR SANCTIONS** |
| v. | |
| SECURE DATA MOTION, INC. d/b/a SIGABA, et al., | |
| Defendant. | |
| AND RELATED COUNTERCLAIMS. | |

Pursuant to this Court's March 21, 2005 order, the parties have submitted documents for *in camera* review to determine whether they are protected from discovery by the attorney-client privilege.[1] In addition, PostX has filed a motion for sanctions based on Sigaba's conduct in asserting privilege over documents and then producing them on the eve of *in camera* review. Having carefully reviewed the documents and letters submitted by the parties, the Court hereby ORDERS as set forth below.

**I.    PostX's documents**

  **A.    Entry Nos. 1, 3, 14, 15, 16, 133, and 135 on PostX's privilege log; Entry Nos. 1, 3, 4, and 5 on Alloy's privilege log; Documents PXT 004935-38, PXT 0087033-40, and 0087041-55**

All of these documents are communications between PostX and its attorneys, which were disclosed

---

[1] Plaintiff produced entry numbers 1, 2, 3, 13, 14, 15, 16, 18, 22, 34, 35, 36, 43, 45, 133, 134 and 135 on its privilege log; entry numbers 1, 3, 4 and 5 on Alloy Ventures' privilege log; and documents PXT0087033-40, PXT0087041-55, PXT0004935-38 and PXT0087029-30. Defendant produced entry numbers 16, 19, 47, 66, 67, 68, 73, 77, 78, 105, 111, 116, 142, and 170 on its privilege log.

to a third party. All the documents are either emails of which Alloy Ventures' John Shoch was a recipient, or PostX Board meeting minutes at which Shoch was present. Voluntary disclosure of a privileged attorney communication to a third party constitutes a waiver of the privilege. See Chevron Corp. v. Penzoil Co., 974 F. 2d 1156, 1162 (9th Cir. 1992). Because of the presence of a third party, these communications are not confidential and no privilege exists.

Plaintiff, however, claims that Shoch's presence did not waive the privilege because the third parties he represents share a "common interest" with PostX. The common interest doctrine requires that "the parties among whom privileged matter is shared must have a common legal, as opposed to commercial, interest." Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A., 160 F.R.D. 437, 447 (S.D.N.Y. 1995). Alloy Ventures is a venture capital fund that invested in PostX. Accordingly, it shared at most a commercial interest, not a legal one. Therefore, the common interest doctrine does not apply and plaintiff may not assert attorney-client privilege for these documents. Plaintiff must produce these documents.

### B.    Entry Nos. 2 and 134 on PostX's privilege log

Entry Nos. 2 and 134 are email strings written on September 12, 2002 of which Allen Morgan was a recipient. On September 13, 2002, Morgan was elected as a director at a PostX Board of Directors meeting. At this meeting, the Board also ratified all of Morgan's actions performed on and after September 11, 2002 as actions taken in his capacity as a director of PostX. Thus, plaintiff contends that Entry Nos. 2 and 134 are protected by the attorney-client privilege, and that Morgan's receipt of them did not waive the privilege.

Nothing in the California Corporations Code prohibits the Board's ratification of Morgan's prior actions, and the Court considers the ratification to be valid. See Cal. Corp. Code §§ 151, 305. Nonetheless, the question here is not the validity of Morgan's actions in his capacity as a member of the PostX Board, but rather whether, at the time the emails were generated, they were communications between PostX representatives and counsel for the purpose of obtaining legal advice, written with the expectation that they would be confidential and without disclosure to third parties. Morgan was not a client of PostX's counsel prior to the September 13 Board vote appointing him, for purposes of the attorney-client privilege. Accordingly,

1  the Court finds that these emails are not privileged and must be disclosed.

3      **C.**    **Entry No. 13, 43, and 45 on PostX's privilege log**

4  Entry No. 13 is a September 11, 2002 email between PostX's Thampy Thomas and Cayce Ullman, copied to counsel, setting up a meeting for the purpose of obtaining legal advice. Communications for the purpose of obtaining legal advice include "correspondence between attorney and client which reveals the client's motivation for creation of the relationship or possible litigation strategy." In re Grand Jury Witness (Salas and Waxman), 695 F. 2d 359, 362 (9th Cir. 1982). This email is clearly protected by the privilege and need not be produced. Entries Nos. 43 and 45 are also emails, both dated September 12, 2002, setting up meetings or telephone conferences, although they include third party Allen Morgan in the distribution list. For the same reasons as in Part B, above, the Court finds that Morgan was a third party, not a client, at the time of these emails, and thus these two documents are not privileged. PostX must produce Nos. 43 and 45.

14      **D.**    **Entry No. 18 on PostX's privilege log**

15  Entry No. 18 fulfills the eight elements of attorney-client privilege. Therefore, plaintiff need not produce it.

18      **E.**    **Entry No. 22 on PostX's privilege log; Document PXT 0087029-30**

19  Entry No. 22 and PXT 0087029-30 are copies of the same document. The document is plaintiff's September 13, 2002 Board meeting minutes. Plaintiff produced the document to defendant after redacting the portion relating to the impact of plaintiff's legal claims on its financial needs, marketing, and operations. When a corporate decision is "based on both a business policy and legal evaluation, the business aspects of the decision are not protected simply because legal considerations are also involved." Hardy v. New York News, Inc., 114 F.R.D. 633, 643-44 (S.D.N.Y. 1987). Additionally, "[a] business that gets marketing advice from a lawyer does not acquire a privilege in the bargain." Matter of Feldberg, 862 F. 2d 622, 626 (7th Cir. 1988). Although the legal advice from plaintiff's attorney is privileged, the effect of pursuing a legal claim on plaintiff's business is not privileged. Therefore, plaintiff may not assert attorney-client privilege on the redacted portion

of Entry No. 22/PXT 0087029-30 and must produce the document in its entirety to defendant.

## II. Sigaba's documents

### A. Entry No. 16 on Sigaba's privilege log

The redacted portion of Entry No. 16 reflects privileged legal advice that was distributed to the defendant's sales department. The attorney-client privilege "protects from disclosure communications among corporate employees that reflect advice rendered by counsel to the corporation. " Bank Brussels Lambert, 160 F.R.D. at 442. Such privileged communications do not lose their protection "if an executive relays legal advice to another who shares responsibility for the subject matter underlying the consultation." Id. The redacted material need not be produced to plaintiff.

### B. Entry No. 68 on Sigaba's privilege log

The redacted portion of Entry No. 68 fulfills the eight elements of attorney-client privilege. Therefore, defendant is not required to produce the unredacted document.

### C. Entry No. 170 on Sigaba's privilege log

Entry No. 170 is not protected by attorney-client privilege because it is not a confidential communication made to an attorney for the purpose of obtaining legal advice. It is merely an email sent to the entire company by a Sigaba officer asking employees to forward to him any documents related to the plaintiff's patent. Although the requested information may later be used by Sigaba's attorneys in forming legal advice, an internal, company-wide request for that information is not a privileged communication. Therefore, Sigaba must produce the document.

## III. PostX's request to order privilege log of Sigaba's redactions

Plaintiff requests that defendant identify documents SD0003154, SC0003222, SC0003273, SC0003298, SC0003313, SC0003319, SC0003396, and SC0003856. See Pl.'s December 21, 2004 Letter Br., Exh. F. These documents were fully redacted and are only identifiable by Bates number. Because

defendant's privilege log does not contain Bates numbers, plaintiff is unable to determine if these documents are listed on defendant's privilege log. The Court hereby ORDERS defendant to identify these documents by privilege log number, and to provide plaintiff with a privilege log for any of these documents that are not already included in its current privilege log.

**IV.    Request for sanctions**

After this Court's March 21, 2005 order, Sigaba reviewed and produced to PostX entry numbers 19, 47, 66, 67, 73, 78, 105, 111, 116, and 142 on its privilege log. PostX now asks the Court to impose sanctions against Sigaba because it improperly withheld non-privileged documents and necessitated the underlying motion to compel. According to PostX, it raised issues with Sigaba's privilege log on July 26, 2004, but Sigaba stood on its claims of privilege. Then, on December 14, 2004, both parties filed letter briefs complaining of deficiencies in the other's privilege logs. PostX argued that both parties should be held to the same standards. In response, Sigaba proposed that the Court conduct in camera review of the contested documents. The Court granted this request and ordered the parties to submit documents on April 1, 2005. Sigaba submitted three documents pursuant to this order, and produced the rest to PostX. PostX now seeks the costs and fees associated with its efforts to obtain the documents ultimately produced. Pl.'s Apr. 7, 2005 Letter Br. at 4.

Sigaba argues that PostX raised the issues about its privilege log briefly in July 2004 but then did not mention them for five months, and ultimately filed its December 14, 2004 letter brief without making a good faith meet-and-confer effort. According to Sigaba, only "after PostX knew that Sigaba was going to file a letter brief challenging the foundation to support documents PostX had withheld from production and listed on [its] own privilege log" did it raise this issue and file a letter brief with the Court. Then, pursuant to the Court's March 21, 2005 order requiring in camera submissions, Sigaba undertook "a further review" of the documents and "decided that it could further narrow the outstanding issues and reduce the burden on the Court by withdrawing its assertions of privilege for several of the documents, simply to expedite resolution and simplify the issues." Def.'s Apr. 14, 2005 Letter Br. at 2-3. By way of explanation, defendant states that five of the documents were virtually the same – different subsets of the same email string – which "contained arguably

5

privileged material," but Sigaba had "little practical reason to keep fighting over privilege on this document." Id. Three other documents were produced because Sigaba had inadvertently produced virtually identical versions earlier in discovery. For the final three documents produced, Sigaba maintains that it had "little practical reason" to keep fighting over privilege, although "two [of the documents] referenced arguably-privileged information." The third document was inadvertently listed on the privilege log. In addition, Sigaba argues that PostX has suffered no prejudice and that it has agreed to reopen a deposition and allow one other to ensure that PostX is not prejudiced by the late productions.

The Court finds that Sigaba improperly asserted claims of privilege and then maintained those claims in the face of a motion to compel. It is not satisfactory that Sigaba "undertook further review" of documents over which it had asserted privilege *after* the Court ordered in camera review and many months after PostX raised objections, and the Court finds unavailing defendant's explanation that some of these documents contain "arguably" privileged material but it saw "little practical reason" to keep fighting over the issue. As PostX correctly states, a document is either privileged or it is not privileged. If Sigaba has now agreed to produce documents it still believes are protected by the privilege, then it faces the possibility of waiver. If Sigaba concedes that these documents are not actually privileged, then it must admit that its prior assertions of privilege were incorrect and that it did not undertake sufficient review in the first place. Either way, the Court considers sanctions appropriate. Rather than order the wholesale production of related documents based on a finding of waiver, the Court finds that Sigaba must pay the costs and fees incurred by PostX in bringing the December 11, 2004 motion to compel regarding the privilege log. Sigaba need not pay any costs or fees associated with PostX's in camera submission of its own privileged documents, which would have been appropriate in any event.

///

**CONCLUSION**

For the foregoing reasons and for good cause shown, the Court hereby ORDERS that all documents produced pursuant to this order be provided **on or before August 22, 2005.** The Court also GRANTS plaintiff's request for sanctions, as outlined above, and directs PostX to provide an itemized statement of fees and costs so incurred by the same date. [Docket #s 434, 436, 532]

**IT IS SO ORDERED.**

Dated: August 16, 2005

SUSAN ILLSTON
United States District Judge