IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| POSTX CORPORATION,<br><br>        Plaintiff,<br><br>   v.<br><br>SECURE DATA MOTION, INC. d/b/a/<br>SIGABA,<br><br>        Defendant.<br>_____/ | No. C 02-04483 SI<br><br>**ORDER DENYING POSTX'S MOTIONS IN LIMINE NOS. 2-5 AND GRANTING IN PART AND DENYING IN PART SIGABA'S MOTION IN LIMINE NO. 4** |

On November 4, 2005, the Court heard oral argument on various motions in limine. Having carefully considered the arguments of counsel and the parties' papers, the Court enters the following order.

**BACKGROUND**

On September 13, 2002, PostX Corporation ("PostX") filed a complaint for patent infringement against Secure Data In Motion, d/b/a Sigaba ("Sigaba") alleging infringement of U.S. Patent No. 6,014,688 ("the '688 patent"). In February 2003, after the U.S. Patent Office issued United States Patent No. 6,477,647 ("the '647 Patent") to PostX, PostX filed a second suit against Sigaba. On September 29, 2003 and November 25, 2003, the Court granted Sigaba's motions for summary judgment of non-infringement of both patents. The Federal Circuit affirmed without opinion on November 15, 2004. On February 4, 2004, the Court granted summary judgment for defendants on PostX's claim for misappropriation of trade secrets under the Uniform Trade Secrets Act ("UTSA") because of PostX's failure to adequately disclose the trade secrets at issue in that claim.

On June 28, 2004, this Court granted PostX leave to file a Third Amended Complaint ("TAC"), amending a claim for breach of confidentiality agreement by former PostX and current Sigaba employee James Reid ("Reid"), and adding a claim for common law unfair competition. See June 28, 2004 Order at 1-2. Sigaba and Reid filed counterclaims against PostX for violations of the Sherman Act, false advertising under the Lanham Act, and unfair competition. On August 22, 2004, PostX and Reid entered into a stipulation dismissing the claims and counterclaims between them. On November 22, 2004, the Court denied a motion by Sigaba to dismiss PostX's unfair competition claim.

In summary judgment orders filed in August 2005 the Court (1) granted PostX's motion for summary adjudication of Sigaba's "antitrust conspiracy" counterclaims; (2) denied Sigaba's motion for summary adjudication of PostX's unfair competition claim; (3) granted PostX's motion for summary adjudication based on *Noerr-Pennington* immunity as to Sigaba's antitrust counterclaims; (4) denied PostX's motion for summary adjudication of Sigaba's Lanham Act counterclaim, with certain limitations on that counterclaim; and (5) denied PostX's motion for summary adjudication of Sigaba's Lanham Act and unfair competition counterclaims. Thus, the remaining claims in the case are: (1) PostX's claim for common law unfair competition; (2) Sigaba's counterclaim under Section 43(a) of the Lanham Act; and (3) Sigaba's counterclaim for common law unfair competition.

**DISCUSSION**

As a general matter, the parties dispute the scope of this Court's August 17 and August 31, 2005 summary judgment orders regarding Sigaba's Lanham Act counterclaim, and much of the parties' briefing on PostX's motions in limine is devoted to the parties' differing interpretations. PostX contends that Sigaba's evidence in support of its Lanham Act counterclaim is limited (1) to statements and conduct that would be independently actionable under the Lanham Act, and (2) to statements and conduct that occurred after the Federal Circuit's ruling in November 2004.

Sigaba contends that even if particular conduct or statements are not independently actionable under the Lanham Act, they may nevertheless be introduced into evidence because they are relevant to both of Sigaba's counterclaims. In addition, Sigaba contends that the Court only immunized the filing of the patent infringement suits and certain statements made in connection with the filing and

prosecution of the patent suits, and that other remarks and conduct, even if made prior to November 2004, are still actionable under the Lanham Act.

Sigaba's interpretation is largely correct. In the August 2005 orders, the Court held that because PostX's patent infringement claims were not baseless, *Noerr-Pennington* immunity attached to the filing of PostX's patent litigation. The Court clarifies that with respect to Sigaba's Lanham Act counterclaim, this holding only immunizes PostX statements regarding the filing of or existence of the patent infringement actions. The Court's orders do not broadly immunize any and all PostX statements that were related to the patent case (including those made prior to November 2004), if such statements otherwise meet the elements necessary for a claim under the Lanham Act or for unfair competition.

Moreover, even if the evidence is not independently actionable, it is still relevant to Sigaba's counterclaims. Sigaba claims that PostX used illicitly-obtained sensitive competitive information to try to "kill" or "cripple" Sigaba, and that PostX widely disseminated confidential information it had obtained to prospective and actual customers and partners. Sigaba contends that PostX also used this information to develop a "counteroffensive" plan that led to the decision to file the patent lawsuits and to widely disseminate infringement accusations against Sigaba, which were designed to create concerns about Sigaba's financial viability and to create concerns about potential exposure to patent infringement claims.

The Court finds that even though PostX's filing of the patent infringement suits is not independently actionable, it is relevant background information about which the jury may be told. The parties should prepare clear jury instructions to guide the jury in their determinations and help the jury sift between evidence that is relevant because it provides a context for the case, versus evidence that is actionable because it goes to the elements of the parties' claims.

**1.     PostX's Motion in Limine No. 2**

PostX seeks to exclude all evidence regarding (1) PostX's decision to file the patent claims; and (2) communications with prospective customers prior to the Federal Circuit's ruling in November 2004. For the reasons set forth *supra*, the Court will not exclude such evidence.

Post X also seeks to exclude all evidence regarding "antitrust and market issues." PostX

3

contends that Sigaba seeks to introduce "voluminous documents and evidence relating to competition between PostX and Sigaba (and other competitors), general market-related documents, and communications with Mayfield." Motion at 4. PostX contends that this evidence is irrelevant based on the Court's August 17, 2005 order granting summary judgment on Sigaba's antitrust claims (and dismissal of the Mayfield defendants), and that such evidence will needlessly prolong and complicate the trial. PostX does not identify any specific evidence falling in this category, but instead refers generally to Sigaba's list of trial exhibits, which numbers in the hundreds.

Sigaba agrees that "evidence relating solely to market definition, dangerous probability of success and antitrust injury are no longer relevant." Opposition at 9. Sigaba contends, however, that some evidence that is relevant to both its dismissed antitrust claims and remaining counterclaims, such as evidence demonstrating that Sigaba was PostX's "only competitor," should not be excluded. Sigaba argues that "the head-to-head competition between PostX and Sigaba was the motivation that led PostX to engaging in nefarious acts, including developing its 'counteroffensive' strategy against Sigaba, engaging in unfair competition, and making objectively baseless false statements to the marketplace." *Id*.

The Court concludes that some evidence regarding the nature of the market in which Sigaba and PostX were competing, and Sigaba's and PostX's positions within that market, is relevant to both parties' unfair competition claims and to Sigaba's Lanham Act counterclaim. Accordingly, the Court DENIES PostX's motion in limine. However, the Court agrees with PostX that there is no need for voluminous documents and evidence on these issues, and the Court will accordingly limit the introduction of such evidence as appropriate at trial.

**2.     PostX's Motion In Limine No. 3**

PostX's motion in limine is based on its belief that Sigaba's counterclaim is limited to the fact that PostX's September 2002 press release announcing the filing of the patent infringement case remained on PostX's website after November 2004. As discussed *supra*, the Court holds that Sigaba's Lanham Act counterclaim is not so limited. Moreover, the Court is not persuaded by PostX's argument that because the September 2002 press release (which as Sigaba notes was repeatedly amended to, *inter*

4

*alia*, change the contact people) always contained its original release date, Lanham Act liability cannot attach based on the fact that PostX kept the press release on its website into 2005. Accordingly, the Court DENIES PostX's motion.

### 3. PostX's Motion In Limine No. 4

To the extent PostX's motion contends that Sigaba is precluded from introducing any evidence of PostX statements made prior to November 2004, that argument has been rejected *supra*. PostX also moves to exclude certain evidence on the ground that Sigaba did not specifically identify the statements at issue in its counterclaims or responses to contention interrogatories. The Court disagrees, finding that Sigaba's interrogatory response, which stated that "PostX touted its litigation against Sigaba, referenced Sigaba's alleged infringement of the '688 and/or '647 patents and suggested that it would sue potential customers if they did business with Sigaba," sufficiently describes the nature of Sigaba's Lanham Act claims.

PostX also contends that specific statements identified by Sigaba are not actionable under the Lanham Act because they were made internally within PostX, do not specifically mention any Sigaba "product," and/or do not constitute "false advertising." These statements include (1) two PostX statements that Sigaba had the burden to prove it was not infringing on PostX's patents; (2) two PostX statements suggesting that Sigaba could not design around PostX's patents; and (3) one statement that Sigaba was "in clear violation of" of PostX's patent. The Court concludes that, for the reasons set forth *supra*, regardless of whether the statements themselves are actionable, they are relevant to Sigaba's counterclaims. Accordingly, the Court DENIES the motion in limine.

### 4. PostX's Motion In Limine No. 5

PostX moves to exclude (1) "litigation damages" consisting of time and money that Sigaba spent on depositions and other matters in the patent litigation; (2) damages flowing from PostX's discussions with customers related to the patent litigation; and (3) "generalized statements" regarding "lost customer opportunities" and "competitive injury." PostX generally asserts that "Sigaba cannot claim damages for injuries allegedly stemming from the fact that PostX brought suit or publicized the patent claims

prior to the Federal Circuit ruling." Motion at 1. For the reasons discussed *supra*, this general statement is overbroad; Sigaba can in fact seek to recover damages for injuries caused by a Lanham Act or unfair competition violation, even if those violations occurred prior to November 2004.

PostX raises a number of objections to the damages assessment contained in the report of Sigaba's damages expert, Dr. Warren-Boulton.[1] PostX argues that Dr. Warren-Boulton's opinions are flawed because they are predicated on the theory that PostX's prosecution of the patent infringement claims was an antitrust violation, and have not separated out which damages flowed from antitrust violations, and which damages flowed from Lanham Act and unfair competition violations. Sigaba contends that because many of the same statements and acts which formed the basis of Sigaba's now-dismissed antitrust claims are also involved in the remaining Lanham Act and unfair competition claims, Dr. Warren-Boulton's expert report remains valid. The Court agrees with Sigaba that this issue does not render Dr. Warren-Boulton's opinions inadmissible, although it does make them vulnerable to substantial challenge on cross-examination.

PostX also contends that Sigaba does not have any damages because it did not lose any customers as a result of PostX's conduct. Sigaba responds that Dr. Warren-Boulton has identified several types of damages suffered by Sigaba, including lost customers and future profits, increased costs to Sigaba of doing business, diversion of resources required for Sigaba to defend itself and to respond to customer concerns, diminution in Sigaba's market worth, and litigation costs.[2] Although Dr. Warren-Boulton is the subject of a *Daubert* motion, that motion has not yet been argued and is not presently before the Court. Thus, to the extent that PostX challenges Dr. Warren-Boulton's damages assessments, that challenge is premature and should be dealt with in connection with the *Daubert* motion. Based upon the record before the Court at this time, however, the Court concludes that Sigaba has introduced sufficient evidence of damages to proceed to the jury. Accordingly, the Court DENIES the motion.

---

[1] PostX has also filed a *Daubert* motion to strike Sigaba's damages expert, Dr. Warren-Boulton. This motion is not one of the motions in limine currently before the Court.

[2] It is not clear from the parties' papers what the "litigation costs" are; if Sigaba is seeking "litigation damages" consisting of attorneys' fees and costs associating with defending the patent lawsuits, this would be improper.

6

**5.    Sigaba's Motion In Limine No. 4**

Sigaba's motion in limine largely reprises its unsuccessful motion for summary adjudication of PostX's unfair competition claim. For its unfair competition claim, PostX alleges that former Post-X employee James Reid leaked confidential PostX information to Sigaba in May-June 2002. Mr. Reid allegedly met with Sigaba employees in May 2002. Reid also sent Sigaba employee Stanley Chin an email on June 11, 2002, containing "a list of customers and potential customers with whom he had interacted while employed by PostX," and Mr. Chin passed this email along to Sigaba's President and Chief Operating Officer John Ferraro and Vice President Rodger Kobayashi. Third Am. Compl. ¶¶ 36, 38. PostX alleges that information about customers and potential customers, as well as confidential information about business and personnel strategy, was proprietary to PostX, and that without it, Sigaba would not have known that some of these entities were using or seeking secure messaging products, who at these entities was responsible for making decisions about such products, and what their purchasing needs and methods were. *Id.* at ¶¶ 39-40.

Sigaba contends that (1) PostX's evidence in support of its unfair competition claim should be limited to the entities PostX identified in its contention interrogatories (Fidelity, Schwab, DST and First Union); (2) PostX's damages claim with respect to Fidelity is entirely speculative and should be excluded; (3) PostX "abandoned" its claim at summary judgment that Sigaba suddenly began appearing at accounts after it met with Mr. Reid on May 5, 2005, and thus PostX cannot now claim that Sigaba learned of new accounts from Mr. Reid; (4) PostX cannot recover damages for time spent responding to Sigaba's purported misrepresentations of PostX's own technology; and (5) the expert opinion on damages by PostX's expert, Mr. Wagner, should be excluded because it is based on speculation that PostX lost the Fidelity account due to Sigaba's actions, and because PostX cannot recover for time spent responding to Sigaba pointing out technical deficiencies in PostX's own products.

**A.    Entities Not Disclosed in Response to Sigaba's Contention Interrogatories**

Sigaba propounded interrogatories requesting that PostX "[s]tate all facts supporting [PostX's] allegation . . . that Sigaba engaged in common law unfair competition, including but not limited to [PostX's] allegations that the entities listed in the JUNE 11, 2002 EMAIL were existing or potential

7

customers of PostX" and that "Sigaba would not have known key information regarding the actual or potential PostX customers." Comb. Cooper Decl. Ex. G at 2:22-26. The portion of PostX's response identifying specific entities is as follows:

> [A]s a result of the information provided to it by Reid, Sigaba learned what First Union's secure document delivery needs were, who at First Union was in favor of the PostX solution and who was against it, and who was involved in negotiating contracts on behalf of First Union and used this information to solicit First Union as a customer . . . . Additionally, Sigaba used the information it obtained from Reid in order to interfere with PostX's contractual relationships with Schwab and DST.

*Id.* at 4:9-16. Sigaba also propounded an interrogatory asking PostX to "[d]escribe in detail the damages YOU contend YOU have suffered as a result of SIGABA's alleged common law unfair competition." *Id.* at 6:21-22. PostX responded that it had suffered damages from the following specific entities,

> PostX's damages include lost customer opportunities, which include, at a minimum, the Fidelity account. Finally, PostX's damages include the time and effort responding to the disclosures and misuse of confidential PostX information made by Sigaba to Schwab and DST and the effort in repairing relations with these entities.

*Id.* at 7:24-27.

Sigaba contends that now that discovery has closed, PostX should be precluded from arguing at trial that its unfair competition claim encompasses accounts other than those identified in its interrogatory responses, i.e., First Union, Schwab, DST and Fidelity.[3] Sigaba further argues that PostX's damages are limited solely to the Fidelity account.

Posts responds that the Court has already rejected Sigaba's argument that PostX's damages are solely limited to the lost Fidelity account. The August 17, 2005 order states:

> Posts responded to the interrogatory regarding the damages it suffered as a result of Sigaba's alleged common law unfair competition by stating: "PostX's damages include lost customers opportunities, which include, at a minimum, the Fidelity account." According to Sigaba, these statements limit PostX's claim for damages to the Fidelity account, and this account is the only one discussed in the report of Michael Wagner, PostX's damages expert. As Posts points out, the Wagner report is not limited in this way, but rather specifies two categories of damages: (1) $1,514,447 from the lost Fidelity account, and (2) the $487,644 "opportunity cost" of an additional 1,400 hours Posts spent servicing actual and potential clients. The Court concludes that PostX's alleged unfair competition damages include both of these figures.

August 17, 2005 Order at 4-5. Thus, the Court already concluded that PostX's damages were not

---

[3] Sigaba notes that Posts's trial exhibit list includes documents relating to Wellmark, AFLAC, and Bank of America.

8

1 limited to the lost Fidelity account, but that they also included the "opportunity cost" of time spent
2 servicing actual and potential clients, and accordingly Sigaba's motion in limine is DENIED to the
3 extent it seeks to exclude all damages evidence unless it relates to the lost Fidelity account. Moreover,
4 the Court notes that PostX's interrogatory response specifically stated that it suffered damages related
5 to Schwab and DST.

6 However, the Court's holding that PostX's damages include "opportunity costs" does not mean
7 that those opportunity costs include costs associated with entities that Posts did not disclose during the
8 discovery process. Posts argues that it was not required to supplement its interrogatory responses
9 because its CEO Thampy Thomas testified at length about the damages and injuries that Posts suffered,
10 and he testified that damages were not limited to the Fidelity account.[4]

11 The Court concludes that to the extent Posts will seek damages related to specific entities, such
12 as lost customer accounts or time spent servicing actual or potential clients, PostX's damages are limited
13 to the entities identified in response to the contention interrogatories (First Union, Schwab, DST, and
14 Fidelity, as well as the additional entity mentioned in the Thomas deposition, Bank of America. *See*
15 Thomas Depo. at 663-65. Neither Wellmark or AFLAC was disclosed in response to Sigaba's
16 contention interrogatories or mentioned in the Thomas deposition, and thus the Court concludes that it
17 would be unfair to allow Posts to claim at trial that it suffered damages related to these entities. *See*
18 Federal Rule of Civil Procedure 37(c)(1). Moreover, Posts has not identified any discovery response
19 or deposition testimony that would have put Sigaba on notice that it was claiming damages related to
20 Wellmark or AFLAC. Accordingly, the Court GRANTS Sigaba's motion in limine to the extent it seeks
21 to exclude damages evidence regarding entities other than Schwab, DST, Fidelity, and Bank of America.
22 Relatedly, the Court GRANTS in part Sigaba's motion in limine to the extent it seeks to preclude Posts
23 from arguing at trial that its unfair competition claim encompasses accounts other than Schwab, DST,
24 Fidelity, First Union and Bank of America.

26 **B.    PostX's "Speculative" Damages**

28 [4] Thomas was produced as PostX's Rule 30(b)(6) witness on damages that Posts has suffered or incurred from any alleged unfair competition by either Jim Reid or Sigaba.

9

Sigaba contends that PostX's damages claim regarding the lost Fidelity account is speculative and thus Posts should be precluded from introducing any evidence that it lost the Fidelity account because of Sigaba's actions. Posts argues, and the Court agrees, that the Court has already rejected this argument in connection with Sigaba's unsuccessful motion for summary adjudication of PostX's unfair competition claim. The Court's August 17, 2005 order states, "the Court finds that Posts has raised a triable issue of fact on the unfair competition claim based on circumstantial evidence. PostX's claim rests on alleged disclosures made by James Reid of PostX's confidential information to Sigaba after he left Posts on April 4, 2002." Order at 5. The Court rejected Sigaba's argument that because PostX's evidence was circumstantial, it could not prove that it had lost the Fidelity account as a result of Sigaba's actions. *See id.* at 5-7. Accordingly, Sigaba's motion in limine on this issue is DENIED.

### C.     Posts "Abandoned" Claims

Sigaba's contention that Posts "abandoned" certain claims at summary judgment misstates PostX's claim. Posts is not alleging that Mr. Reid introduced Sigaba to Fidelity (or DST or Schwab), or that Sigaba had no knowledge of these accounts prior to Mr. Reid's email. Rather, Posts alleges that Mr. Reid shared confidential Posts information with Sigaba that Sigaba used to win the Fidelity statement account and that caused Posts to needlessly expend energy in other accounts that could have been used for other sales opportunities. Accordingly, the Court DENIES Sigaba's motion on this issue.

### D.     "Irrelevant" Evidence

Sigaba contends that Posts should be precluded from introducing any evidence regarding what transpired at a "handful of accounts (such as Wellmark, AFLAC, DST and Bank of America)" to support its claim that Sigaba engaged in a pattern of business practices designed to unfairly compete with Posts. Sigaba argues that such evidence should be excluded because (1) with the exception of DST, none of the accounts were identified in PostX's interrogatory responses; (2) at least certain of the conduct at issue occurred "well" after the relevant time period in May-June 2002 when Mr. Reid and Sigaba first communicated and therefore has nothing to do with any purported leak by Mr. Reid; (3)

10

evidence that occurred at a few accounts cannot constitute admissible "pattern" evidence under Federal Rule of Evidence 404(b); and (4) Sigaba's purported misrepresentations about its own technology are not confidential Posts information that could support a common law unfair competition claim.

In light of the Court's holding *supra* that Posts may not put on evidence regarding Wellmark, and AFLAC, the question is whether Posts can put on evidence that Sigaba allegedly made misrepresentations to DST and Bank of America about PostX's and Sigaba's technology. Sigaba makes much of the Court's statement in its August 17, 2005 order that "this allegation cannot, on its own, form the basis for PostX's unfair competition claim, in part because it is difficult to see how pointing out the differences between two products is an appropriation or use of the plaintiff's confidential information." Order at 6. However, the Court concludes that even if such evidence is not actionable on its own, it is relevant to PostX's unfair competition claim, and accordingly Sigaba's motion in limine on this issue is DENIED.

### E.     Mr. Wagner's Expert Report Regarding Damages

Sigaba contends that the report of PostX's damages expert, Mr. Wagner, should be excluded because his damages calculations are based on speculative assumptions that Posts will be able to prove that (1) it was unable to obtain a contract with Fidelity as a result of the information that Mr. Reid allegedly provided to Sigaba, and (2) Posts personnel spent at least 1400 hours addressing statements by Sigaba concerning defects in PostX's technology.

As discussed *supra*, the Court has already rejected Sigaba's argument that Posts cannot show, through circumstantial evidence, that Posts lost the Fidelity account. With respect to Mr. Wagner's "opportunity cost" estimate, the Court agrees with Posts that there is nothing in the Court's August 2005 summary judgment orders that precludes Posts from seeking damages related to time spent dealing with Mr. Reid's disclosure of confidential information, and disclosure of alleged misinformation. Accordingly, the Court DENIES Sigaba's motion in limine on this issue.

**6.     PostX's Objections to Sigaba's Evidence**

Posts objects to evidence submitted by Sigaba in connection with the instant motions in limine on the grounds that such evidence is (1) irrelevant because it pertains to pre-November 2004 statements and actions by Posts regarding the patent infringement lawsuits; (2) contains hearsay; and (3) lacks foundation.  Posts also objects to various exhibits related to Sigaba's damages expert, Dr. Warren-Boulton, because he is the subject of a *Daubert* motion.

For the reasons set forth *supra*, the Court concludes that the pre-November 2004 evidence Sigaba has submitted is not per se irrelevant.  With respect to hearsay, Posts identifies only a few examples of hearsay testimony submitted as exhibits to the Fisher declaration; the Court has not considered any of this evidence for the purposes of determining the instant motions, and it is not necessary at this point to comb through all of the voluminous exhibits submitted by the parties to determine whether any particular piece of evidence is admissible.  Similarly, PostX's general objection that "some of the exhibits proffered in the Fisher declaration lack foundation" lacks any specificity whatsoever to constitute a proper objection.  Finally, PostX's objections to the exhibits submitted in connection with Dr. Warren-Boulton can be re-raised in connection with PostX's *Daubert* motion.

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby DENIES Post-X's motions in limine nos. 2-5, and GRANTS in part and DENIES in part Sigaba's motion in limine no. 4. [Docket Nos. 917, 918, 922, 928, and 944].

**IT IS SO ORDERED.**

Dated: January 18, 2006

SUSAN ILLSTON
United States District Judge