IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

POSTX CORPORATION,

         Plaintiff,

  v.

SECURE DATA IN MOTION, INC., dba SIGABA,

         Defendant.
                                  /

AND RELATED COUNTERCLAIMS.
                                  /

No. C 02-04483 SI
Related Case C 03-521 SI

**ORDER DENYING SIGABA'S POST TRIAL MOTIONS**

On June 9, 2006, the Court heard oral argument on defendant's post-trial motions. After careful consideration of the arguments of counsel and the parties' papers, the Court hereby enters the following order.

**BACKGROUND**

In March 2006, PostX and Sigaba went to trial on the following claims: PostX's claim for common law unfair competition, and Sigaba's claims for false and misleading advertising under the Lanham Act, and common law unfair competition. After a nine day trial, a jury found in favor of PostX on its unfair competition claim, found against Sigaba on its claims, and awarded PostX $450,000 in damages.

Now before the Court are three motions filed by Sigaba: (1) a motion to alter or amend the judgment based on PostX's alleged unclean hands; (2) a renewed motion for judgment as a matter of law; and (3) a motion for attorneys' fees and costs related to defending against PostX's patent infringement claims.

**DISCUSSION**

**1.      Sigaba's Motion to Alter or Amend Judgment Based on Unclean Hands**

Sigaba seeks to eliminate the entirety of the jury's award of $450,000 to PostX based on the doctrine of unclean hands. Sigaba contends that PostX should not recover on its unfair competition claim because PostX engaged in misconduct by forming and carrying out its "counter-offensive" strategy, and by seeking and obtaining confidential Sigaba information which PostX then used in the marketplace.

Sigaba's motion recites a familiar litany of alleged misdeeds, all of which formed the basis of Sigaba's unsuccessful claim for common law unfair competition. In June 2002, PostX's CEO Thampy Thomas met with Gary Friedman, the former CEO and co-founder of Sigaba. At that meeting, Mr. Thomas learned information about how Sigaba was funded and about Sigaba's business strategy. According to Sigaba, Mr. Thomas and his team at PostX used this confidential information to devise a "counter-offensive" plan to "kill" Sigaba; PostX's plan included attacking Sigaba's financial viability, filing meritless patent infringement claims, and "flooding" the marketplace with false statements relating to its infringement accusations.

Sigaba contends that PostX's unclean hands bar any recovery by PostX on its claim for unfair competition. However, "[t]he misconduct that brings the unclean hands doctrine into play must relate directly to the transaction concerning which the complaint is made. It must infect the cause of action involved and affect the equitable relations between the litigants." *Kendall-Jackson Winery, Ltd. v. Superior Court*, 76 Cal. App. 4th 970, 984 (1999). Courts have required a "direct relationship between the misconduct and the claimed injuries" because the doctrine of unclean hands "'cannot be distorted into a proceeding to try the general morals of the parties.'" *Mattco Forge, Inc. v. Arthur Young & Co.*, 52 Cal. App. 4th 820, 846 (1997) (*quoting Fibreboard Paper Prod. Corp. v. East Bay Union of Machinists*, 227 Cal. App. 2d 675, 729 (1964)).

Here, PostX's claim for common law unfair competition was based upon events in May 2002 when former PostX executive James Reid leaked confidential PostX information to Sigaba, and Sigaba then used that information to PostX's detriment. The evidence at trial showed that Sigaba began using the confidential information it obtained from Mr. Reid prior to the June 2002 meeting between Messrs.

2

Thomas and Friedman. More important than this temporal distinction, there is no direct connection between the facts underlying PostX's unfair competition claim and PostX's alleged misconduct: the May 2002 meeting and Sigaba's subsequent misappropriation of confidential PostX information was not related to PostX's "counter-offensive" plan. At the most, the relationship is of a general and indirect nature in that the parties accused each other of engaging in bad acts designed to put the other out of business. However, PostX's alleged misconduct is not directly tied to its own unfair competition claim, and accordingly does not bar recovery on that claim. *Compare Unilogic, Inc. v. Burroughs Corp.*, 10 Cal.App.4th 612, 618, 621 (1992) (although defendant converted plaintiff's proprietary information during a failed joint project, plaintiff's unclean hands – bribery to obtain the contract, failure to disclose financial difficulties, and its own conversion of defendant's property – during the same joint project precluded relief), *with Vacco Industries, Inc. v. Van Den Berg*, 5 Cal. App. 4th 34, 50, 52-53 (1992) (plaintiff's wrongful discharge of defendant was immaterial in a suit seeking compensatory and injunctive relief for defendant's misappropriation of plaintiff's trade secrets).

Accordingly, the Court DENIES Sigaba's motion to alter or amend the judgment.

**2.      Sigaba's Renewed Motion for Judgment as a Matter of Law**

Sigaba moves for judgment as a matter of law on PostX's unfair competition claim, contending that PostX failed to introduce any evidence at trial that would link PostX's supposed injuries to any misappropriation of confidential information by Sigaba. At trial, PostX claimed that it had been damaged by Sigaba's misappropriation of confidential PostX information because it lost the Fidelity account and it had to spend 1,400-1,500 hours responding to attacks on PostX's technology in the marketplace. The jury found in favor of PostX and awarded $450,000 in damages.

Sigaba contends that Mr. Thomas' testimony revealed that all of the product performance information Mr. Reid purportedly leaked to Sigaba was, in fact, false. Thus, Sigaba argues, PostX did not and could not show that it invested any time, skill or money in developing false information about its own products, nor could PostX show that any such information was confidential information of PostX. In addition, Sigaba argues that PostX's customers and prospects knew about and raised concerns about problems with PostX's products long before Sigaba ever met with Mr. Reid. Sigaba contends that

PostX was unable to identify a single customer or prospect that was contacted by Sigaba as a result of its purported misappropriation of PostX's business information, and that instead, PostX provided only speculative testimony from its executives about the number of hours spent trying to cure "Sigaba's purported misrepresentations to unidentified customers about PostX's widely-known problems." Motion at 3.

In reviewing Sigaba's motion for judgment as a matter of law, the Court must view the evidence in the light most favorable to PostX and draw all reasonable inferences in its favor. *See Josephs v. Pacific Bell*, 443 F.3d 1050, 1062 (9th Cir. 2006). "The test applied is whether the evidence permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict." *Id.* Applying this standard, the Court concludes that Sigaba is not entitled to judgment as a matter of law. The evidence at trial showed that within a month of leaving PostX, Reid had a series of meetings with Sigaba employees, and that during those meetings Reid shared PostX secrets concerning perceived scalability, performance, documentation and auditing problems, as well as the pricing of the Schwab deal. *See* Trial Tr. at 526:8-527:21; Bass Decl. Ex. C (May 16, 2002 email from Chakroborty to Olkin, Ferraro and Cook titled "RE: Jim Reid"). In addition, the evidence showed that after the May 2002 meeting, customers for the first time began expressing the same concerns that Schwab raised – and that Reid leaked to Sigaba.

Contrary to Sigaba's assertions that Reid leaked "false" information, both Thomas and Ullman testified that the statements in Reid's May 2002 leak were true at the time of the leak, even though Schwab's concerns about scalability, performance, documentation and auditing were addressed by PostX by the time Dr. Thomas took over as CEO in July 2002. *See* Trial Tr. at 351:24-352:12, 353:5-10; *id.* at 765:2-24. Similarly, there was sufficient evidence for the jury to conclude that the information that Reid leaked was "confidential." Mr. Ullman repeatedly testified that the information that Reid learned from Charles Schwab about Schwab's concerns with PostX's products, as well as the pricing of the Schwab deal, was considered confidential. Trial Tr. at 767:3-15, 799:3-800:20; *see also id.* at 278. In addition, John Ferraro, Sigaba's President in May 2002, testified that he was not aware of numerous facts leaked by Reid until after the May 16, 2002 meeting with Reid. *See* Ferraro Depo. at 254-99, attached as Ex. H to Abrams Decl.

The Court further finds no basis to overturn the jury's $450,000 damages award. Sigaba does not contend that the jury was improperly instructed concerning any element of PostX's claim, or on damages specifically. Instead, Sigaba argues that the jury's damages award was based entirely upon speculation, and that PostX did not tie its alleged damages to any particular customers. The Court disagrees. Mr. Thomas testified at trial that he was personally involved with or aware of staff who spent significant time responding to concerns and questions raised by Fidelity, Schwab, DST, and Bank of America. Trial Tr. 277:1-278:5. Mr. Thomas testified that he estimated that "five of us spent at least one hour a day on these matters during that time period and another five or six spent maybe one hour a week on those matters during the same 12 month time period," for a total of 1,400 to 1,500 hours. *Id.* at 278:21-24, 279:17-23. Mr. Thomas explained that he valued the time spent as follows:

> The best way we came up with a value was how much we charge for people of our technical caliber to our customers if we had to do a special project to our customers, we charge them on an hourly basis. And product managers charged $300 an hour, so I took 1,400 hours or 1,500 hours and time by $300 an hour.

*Id.* at 280:1-5. Mr. Thomas testified that this was a "very conservative estimate." *Id.* at 280:10. Thus, PostX presented sufficient evidence to form the basis of the jury's damages award.

Accordingly, for the foregoing reasons the Court DENIES defendant's motion for judgment as a matter of law.

**3.    Sigaba's Motion for Attorneys' Fees**

Pursuant to 35 U.S.C. Section 285, Sigaba seeks an award of attorneys' fees and costs incurred in connection with defending against PostX's unsuccessful patent infringement claims in this case and the related action of C 03-0521. This Court granted summary judgment on non-infringement in both cases, and the Federal Circuit affirmed. Sigaba contends that PostX's pursuit of the patent infringement claims was in bad faith and sufficiently vexatious to constitute an "exceptional" case warranting fees and costs under the Patent Act.

In *Brooks Furniture Manufacturing Inc. v. Dutalier International Inc.*, 393 F.3d 1378 (Fed. Cir. 2005), the Federal Circuit articulated the standard for awarding fees and costs under the Patent Act:

> A case may be deemed exceptional when there has been some material inappropriate conduct related to the matter in litigation, such as willful infringement, fraud or

5

inequitable conduct in procuring the patent, misconduct during litigation, vexatious or unjustified litigation, conduct that violates Fed. R. Civ. P. 11, or like infractions. [citations omitted] Absent misconduct in conduct of the litigation or in securing the patent, sanctions may be imposed against the patentee only if both (1) the litigation is brought in subjective bad faith, and (2) the litigation is objectively baseless.

*Id.* at 1381. In *Brooks Furniture*, the district court granted summary judgment on non-infringement in a declaratory relief action, and awarded the plaintiff fees and costs. The Federal Circuit reversed, holding that the plaintiff had failed to establish subjective bad faith on the part of the patentee. *Id.* The court noted that because there was no subjective bad faith, there was no need to decide whether the "objectively baseless" requirement had been met. *Id.* at 1381-82.

By order filed August 17, 2005 order, the Court held, *inter alia*, that PostX's patent infringement claims in 02-4483 regarding Sigaba's SendAnywhere configuration were not objectively baseless under the standard articulated in *Professional Real Estate Investors v. Columbia Pictures Industries*, 508 U.S. 49 (1993) ("*PREI*"), and thus that PostX was entitled to *Noerr-Pennington* immunity. *See* Docket No. 833 at 7-12. The Court held that PostX's proposed constructions of various claim terms, such as "a first computer," "opening said email message," "a database," and "automatic," were not unreasonable. *Id.* at 11-12.

Seeking to avoid the impact of the Court's order, Sigaba contends that the language from *Brooks Furniture* regarding an "objectively baseless" requirement is "poorly worded dicta." The Court disagrees. Although *Brooks Furniture* did not reach the question of whether the "objectively baseless" requirement had been met, the court's statement of the test is unambiguous. *See* 393 F.3d at 1381-82 & n. 2 (*citing*, *inter alia*, *PREI*). Accordingly, this Court's August 17, 2005 order bars any fee recovery by Sigaba related to the infringement claims.

Alternatively, Sigaba contends that even if *Brooks Furniture* applies, Sigaba is still entitled to fees related to PostX's infringement claims against configurations other than SendAnywhere, such as Plug-In, Secure Reply, and Web Encryptor. Sigaba argues that PostX improperly expanded the lawsuit wherever it could by asserting objectively baseless infringement claims regarding these products when PostX had already concluded that those products did not infringe. Sigaba contends that because the August 17, 2005 order only mentions the SendAnywhere configuration, Sigaba may recover fees related to these other configurations.

6

The Court is not persuaded by Sigaba's arguments. Although Sigaba is correct that the August 17, 2005 order only specifically mentions the SendAnywhere product, the reasoning of that order applies to PostX's patent infringement claims concerning the Plug-In, Secure Reply and Web Encryptor configurations. PostX's proposed constructions of various claim terms governed all four of the configurations, *see* Docket No. 146 (November 26, 2003 summary judgment order on patent infringement claims), and thus, the Court's August 17, 2005 order finding those proposed constructions reasonable also applies to all four configurations.

For the foregoing reasons, the Court hereby DENIES Sigaba's motion for attorneys' fees.[1]

### 4.     PostX's Objections to Sigaba's Evidence

PostX objects to a number of exhibits submitted by Sigaba in support of the post-trial motions. To the extent PostX objects to exhibits that were admitted at trial, the Court OVERRULES those objections. To the extent PostX objects to exhibits that were not admitted at trial, the Court SUSTAINS those objections. However, the Court notes that even if the Court admitted the exhibits that were not admitted at trial, the Court would still reach the same disposition on the pending motions.

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby DENIES Sigaba's motion to alter or amend judgment (Docket No. 1129), DENIES Sigaba's motion for judgment as a matter of law or alternatively motion for a new trial (Docket No. 1133), and DENIES Sigaba's motion for award of reasonable attorneys' fees. (Docket No. 1132). The Court SUSTAINS in part and OVERRULES in part PostX's objections to Sigaba's evidence. (Docket No. 1143).

**IT IS SO ORDERED.**

Dated: July ___, 2006

Susan Illston
SUSAN ILLSTON
United States District Judge

---

[1] The Court shall issue a separate order concerning PostX's bill of costs.